UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY LEWIS VAUGHN, | 1:06-CV-01019 LJO JMD HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| WARDEN G.J. GIURBINO, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Tulare County Superior Court. (Pet. at 2; Answer at 1.) Petitioner was convicted by a jury for possession of a controlled substance (Cal. Health & Safety Code § 11377(a)); being under the influence of methamphetamine (Cal. Health & Safety Code § 11550(a)); resisting arrest (Cal. Penal Code § 148(a)(1)); unauthorized possession of a hypodermic syringe (Cal. Bus. & Prof. Code § 4140); providing false information to a police officer (Cal. Penal Code § 148.9(a)); and lastly, riding a bicycle under the influence of alcohol or a controlled substance (Cal. Veh. Code § 21200.5). (Answer at 2). Petitioner was sentenced to a term of twenty-five years-to-life. (Id).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (Id). The appellate court affirmed Petitioner's conviction, rejecting his contention that the sentence imposed on him was cruel or unusual, on December 16, 2005. (Lod. Doc. 1).

1    On January 17, 2006, Petitioner filed a petition for review to the California Supreme Court
2 alleging ineffective assistance of trial counsel and that Petitioner's sentence constituted cruel and
3 unusual punishment. (Lod. Doc. 2). The Supreme Court summarily denied the petition on February
4 27, 2006. (Lod. Doc. 3).

   Petitioner subsequently filed the instant federal petition for writ of habeas corpus in the
Central District of California on May 9, 2006. The petition sets forth two grounds for relief–first
contending that Petitioner's sentence constitutes cruel and unusual punishment and additionally,
alleging that trial counsel provided ineffective assistance of counsel. On June 2, 2006, Respondent
filed an application to transfer the action to the Eastern District of California.

   On August 4, 2006, this action was transferred to the Eastern District of California.

   On February 19, 2008, Respondent filed an answer to the petition.

## **FACTUAL BACKGROUND**[1]

   While on probation for making a terrorist threat (Pen. Code, § 422), defendant was arrested for possession of methamphetamine and related misdemeanors. He was convicted after a jury trial; the court found true three strike allegations. The matter was referred for a presentence report.

   That report disclosed the following. Since 1981, when defendant was 18, defendant has spent much of his life incarcerated. After incurring six separate convictions-two of which were felony convictions for which he served prison sentences-in Tennessee, defendant moved to California and soon was convicted of two felonies, including his first strike, in 1993.

   After completing his first California prison sentence, defendant was soon convicted of his second strike offense and recommitted to prison in 1996. After release on parole, defendant was returned to custody eight times over a period of four years for violations of parole (mostly for drug violations). Within a year after his final release from parole on the 1996 conviction, defendant committed his third strike offense, making a terrorist threat. (This offense also had been charged as a three strikes case, but the court exercised its discretion to strike the strike allegations. (See People v. Superior Court (Romero) (1996) 13 Cal.4th 497.))

   The court sentenced defendant to 25 years to life, with a concurrent sentence on the terrorist threat count. Defendant filed a timely notice of appeal.

(Lod. Doc. 1 at 2).

---

[1] These facts are derived from the unpublished opinion by the California Court of Appeal, Fifth District, issued on December 15, 2005. (Lod. Doc. 1). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

# DISCUSSION

## I. Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. A writ of habeas corpus may be heard in the district court that sentenced the petitioner. *See* 28 U.S.C. § 2241(d). As Petitioner's conviction arose from a judgment of the Tulare County Superior Court, which is in this judicial district, the Court has jurisdiction and is the proper venue for this case. *See* 28 U.S.C. § 84(b).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

## II. AEDPA Standard of Review

This Court may entertain a petition for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

**III.     Review of Petitioner's Claim**

**A.     Ground One**

Petitioner's first ground for relief contends that his sentence constitutes cruel and unusual punishment in violation of the federal constitution. This claim was raised on appeal to the California Court of Appeal, which issued a reasoned opinion rejecting Petitioner's contentions. (Lod. Doc. 1). Petitioner subsequently submitted a petition for review to the California Supreme Court, which denied the petition without comment. (Lod. Doc. 3). By their "silent order" denying the petition, the state supreme court is presumed to have denied the claim presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may violate the Eighth Amendment. Rummel v. Estelle, 445 U.S. 263, 265-266 (1980) (upholding a life sentence with the possibility of parole, imposed under a Texas recidivist statute, for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years); *cf.* Solem v. Helm, 463 U.S. 277, 279-81 (1983) (applying the proportionality criteria to find that sentence of life without the possibility of parole was grossly disproportionate to crime of uttering a "no account" check for $100.00, even in light of defendant's prior six nonviolent felony convictions).

In Harmelin v. Michigan, 501 U.S. 957 (1991), the U.S. Supreme Court upheld a life sentence without the possibility of parole for a defendant convicted of his first felony offense–possessing more than 650 grams of cocaine. Harmelin v. Michigan, 501 U.S. 957 (1991). The Court upheld the sentence with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment. Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review. Justice Kennedy, in a concurring opinion joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime. The majority of the justices in Harmelin, though, agreed that outside capital punishment, deeming a sentence cruel and unusual

1  punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.
2  Id. at 964.  The threshold for such an inference of disproportionality is high.  *See* id. at 1001.  In
3  concluding that the defendant's sentence did not meet the threshold factor of "gross
4  disproportionality," Justice Kennedy stressed the serious nature of Harmelin's offense, stating that
5  the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent
6  crime at issue in Solem." Id. at 1002.

7  In Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct.1166 (2003), the Supreme Court held that the
8  only clearly established legal principle is that a "gross disproportionality" review applies to criminal
9  sentences for a term of years.  Id. at 1173.  Citing extensively to its previous cases, the Court
10 acknowledged that it has "not established a clear and consistent path for courts to follow." Id.  Thus,
11 the Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to'
12 or 'unreasonable application of' frame work is the gross disproportionality principle, the precise
13 contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.
14 The Supreme Court further stated that, "[t]he Eight Amendment does not require strict
15 proportionality between the crime and sentence.  Rather, it forbids only extreme sentences that are
16 'grossly disproportionate' to the crime." Ewing v. California, 123 S.Ct. 1179, 1186-1187 (2003)
17 (adopting Justice Kennedy's view expressed in his concurring opinion in Harmelin, 501 U.S. at 1001
18 (citing Solem, 463 U.S. at 288)).

19 In examining an Eighth Amendment challenge alleging that a sentence violates the
20 prohibition on cruel and unusual punishment, the court must examine both the triggering crime and
21 the petitioner's criminal history.  Taylor v. Lewis, 460 F.3d 1093, 1099 (9th Cir. 2006).  The Ninth
22 Circuit in Taylor stated that, "[a]lthough the Supreme Court has said that we 'must focus on the
23 principal felony-the felony that triggers the life sentence,' it has made clear that we must also 'place
24 on the scales' a petitioner's 'long history of felony recidivism.'" Id. (citations omitted)(quoting
25 Solem, 463 U.S. at 297 n. 21 and Ewing, 538 U.S. at 29).

26 The Lockyer court rejected a petitioner's Eighth Amendment challenge to his sentence for
27 stealing $153 worth of videotapes on separate occasions.  Lockyer, 538 U.S. at 66.  The petitioner
28 was sentenced to two consecutive terms of twenty-five years-to-life and parole eligibility set at a

minimum term of fifty years.  Id.  In looking beyond the petitioner's most recent conviction, the Supreme Court noted that the petitioner had been in and out of state and federal prison for the last thirteen years prior to his conviction.  Id.  The Ninth Circuit, in Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), summarized the Lockyer court's holding in the following manner:

> [T]he Supreme Court held the state court's decision was not an unreasonable application of these precedents because the proportionality principle affords legislatures broad discretion in determining appropriate sentences for recidivists, and it was not objectively unreasonable for the state court to decide in light of Andrade's criminal history that his sentence was not outside the "contours" of the proportionality principle and thus not the "extraordinary case" resulting in a sentence that violated the Eighth Amendment.

Ramirez, 365 F.3d at 767.  The Ninth Circuit in Ramirez rejected a sentence of twenty-five years-to-life for a shoplifting offense, finding it a violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  Id. at 768.  Ramirez had been sentenced to this term as a result of California's "Three Strikes" law.   The Ramirez court distinguished its facts from Lockyer, noting that "Ramirez's extreme sentence raises an inference of gross disproportionality when compared to the gravity of his most recent offense and criminal history." Id. at 767.  Unlike the petitioner in Lockyer, Ramirez's criminal history was comprised entirely of two prior shoplifting offenses occurring ten years previously, for which he served only a one year sentence. Id. At 768.  Concluding that, "[t]he gravity of Ramirez's criminal history thus pales in comparison to the lengthy recidivist histories discussed above in Solem, Ewing, and Andrade," the Ninth Circuit found that Ramirez presented the extremely rare case that gave rise to an inference of gross disproportionality.  Id. at 769-770.

As the state appellate court noted, Petitioner's case is distinguished from Ramirez as Petitioner's criminal history reveals that he is "an incorrigible recidivist." (Lod. Doc. 1 at 3). Petitioner was on probation for making a terrorist threat, his third strike, when he was arrested for possession of methamphetamine. (Lod. Doc. 4 at 3).  Petitioner's extensive criminal history dates back to 1981 and includes multiple felonies. (Lod. Doc. 4 at 3-5).  Petitioner's situation more closely mirrors the criminal history contained in Lockyer as Petitioners' record reveals that he was in and out of prison for the preceding twenty-three years prior to his arrest in 2004.  *See also* Taylor, 460 F.3d at 1101.  In Taylor, the Ninth Circuit held that the petitioner's criminal history, which

spanned thirty years and included the intentional taking of human life and three prior prison terms, weighed heavily in favor of finding reasonable the appellate court's opinion rejecting petitioner's Eighth Amendment claim. Similarly, Petitioner's criminal history, spanning over twenty years with multiple felony convictions, weighs heavily in favor of finding that the appellate court was not unreasonable in rejecting Petitioner's Eighth Amendment claim.

Furthermore, it is not unreasonable for a state appellate court to consider Petitioner's triggering offense to be as serious as the offenses for which the Supreme Court upheld life sentences with the possibility of parole in Rummel, Ewing, and Andrade. *See* Taylor, 460 F.3d at 1099 (noting that the State is entitled to the view that possession of illegal drugs represents "one of the greatest problems affecting the health and welfare of our population " in quoting Harmelin, 501 U.S. at 1002 (Kennedy, J., concurring)). In considering both the gravity of the offense and Petitioner's criminal history, it is clear that Petitioner has failed to show that his indeterminate life sentence is constitutionally disproportionate. *See* Andrade, 538 U.S. at 77; *see also* Greenholtz, 442 U.S. at 7 (stating "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Accordingly, Petitioner is not entitled to relief on this claim.

### B.     Ground Two

In his second ground for relief, Petitioner contends that his trial counsel provided ineffective assistance of counsel. Petitioner fails to specify in this instant petition the basis for which he alleges that his counsel was ineffective. Respondent correctly notes though that Petitioner alleged before the California Supreme Court that counsel was ineffective in failing to make a specific challenge to Petitioner's sentence. (Answer at 8; Lod. Doc. 2 at 12-13). The issue was then raised to the California Court of Appeal and California Supreme Court, which summarily denied the claim. (Lod. Docs. 1 and 3). As a result of the unexplained rejections, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Having done so, the Court concludes that Petitioner's claim cannot succeed.

For the purposes of habeas cases governed by 28 U.S.C. § 2254 (d), the law governing

ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). A petition for writ of habeas corpus, resting upon an allegation of ineffective assistance of counsel, requires that the Petitioner establish two elements–(1) counsel's performance was deficient and (2) Petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); United States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). Generally, ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of 28 U.S.C. § 2254(d) recognized in Williams v. Taylor 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1061-1062 (9th Cir. 2000).

Under the first element, Petitioner must show that counsel's errors were so serious that he or she effectively failed to function as the "counsel" guaranteed under the Sixth Amendment. Strickland, 466 U.S. at 687. Petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. There exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Consequently, to prevail on the first prong, Petitioner must prove that counsel's performance was unreasonable under prevailing professional norms.

Secondly, Petitioner must show that counsel's errors were so egregious that Petitioner was deprived of the right to a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687. The court must evaluate whether the entire trial was fundamentally unfair or unreliable as a result of counsel's deficient performance. Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838 (1993); Quintero-Barraza, 78 F.3 at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994). More specifically, to prevail on the second element, Petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466

U.S. at 694).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to a petitioner's case is fatal to an ineffective assistance of counsel claim.

Petitioner alleged in state court that counsel's failure to specifically challenge the sentence on the constitutional grounds resulted in prejudice. (Lod. Doc. 2 at 13) . In order to show that counsel's alleged deficient performance was prejudicial, Petitioner must therefore establish that there exists a reasonable probability that the trial court would have acted more favorably in sentencing given the constitutional objection. However, as noted by the Supreme Court in Ewing, a defendant with two or more prior "serious" or "violent" felony convictions *must* receive, under California "Three Strikes" law, an indeterminate term of life imprisonment with the minimum parole eligibility of whichever is the greater of (a) three times the term otherwise provided for the current conviction, (b) 25 years, or (c) the term determined by the court pursuant to § 1170 for the underlying conviction, including any enhancements. Ewing, 538 U.S. at 16 (citing Cal. Penal Code §§ 667(e)(2)(A) and 1170.12(c)). Thus, it is unclear how stating a constitutional challenge would have resulted in a lesser term since the trial court was required to sentence Petitioner to a indeterminate life sentence upon a finding of two prior serious or violent felony conviction.  Furthermore, as noted by Petitioner in his brief submitted to the state court, trial counsel did unsuccessfully argue for leniency in sentencing and asked the trial court to place Petitioner in a drug treatment program rather than incarcerate him. (RT at 187-188).  More importantly, as discussed above, Petitioner's constitutional challenge to his sentence would not have been successful considering the gravity of his criminal history and his offense.  As such, the Court does not believe that there exists a reasonable probability that Petitioner would have achieved a more favorable result even if counsel had specifically raised an Eighth Amendment claim.  Consequently, the Court finds Petitioner has not met his burden of proving that counsel's performance prejudiced him and thus cannot succeed on this claim.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 24, 2008           /s/ John M. Dixon**
                                     UNITED STATES MAGISTRATE JUDGE